TRINETTE G. KENT (State Bar No. 025180)
11811 North Tatum Blvd., Suite 3031
Phoenix, AZ 85028
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

*Of Counsel to*
Lemberg & Associates LLC
A Connecticut Law Firm
1100 Summer Street
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile: (203) 653-3424

Attorneys for Plaintiff,
Concepcion Olivares

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Concepcion Olivares, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| National Attorney Collection Services, Inc.; and DOES 1-10, inclusive, | **JURY TRIAL DEMANDED** |
| Defendants. | |

For this Complaint, the Plaintiff, Concepcion Olivares, by undersigned counsel, states as follows:

## JURISDICTION

1.     This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and the invasions of Plaintiff's personal privacy by the Defendants and its agents in their illegal efforts to collect a consumer debt.

2.     Original and supplemental jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1367.

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendants transact business here and a substantial portion of the acts giving rise to this action occurred here.

## PARTIES

4.     The Plaintiff, Concepcion Olivares (hereafter "Plaintiff"), is an adult individual residing in Tolleson, Arizona, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

5.     The Defendant, National Attorney Collection Services, Inc. (hereafter "NACS"), is a California company with an address of 3940 Laurel Canyon Boulevard, Unit 607, Studio City, California 91604, operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

2

6.      Does 1-10 (the "Collectors") are individual collectors employed by NACS and whose identities are currently unknown to the Plaintiff.  One or more of the Collectors may be joined as parties once their identities are disclosed through discovery.

7.      NACS at all times acted by and through one or more of the Collectors.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

### A. The Debt

8.      The Plaintiff allegedly incurred a financial obligation in the approximate amount of $2,080.00 (the "Debt") to an original creditor (the "Creditor").

9.      The Debt arose from services provided by the Creditor which were primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

10.     The alleged Debt was purchased, assigned or transferred to NACS for collection, or NACS was employed by the Creditor to collect the Debt.

11.     The Defendants attempted to collect the alleged Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

### B. NACS Engages in Harassment and Abusive Tactics

12.     Within the last year, Defendants placed numerous calls to Plaintiff's cellular phone in an attempt to collect the Debt.

3

13.     During a phone conversation on September 8, 2012, NACS informed Plaintiff that she needed to satisfy the Debt immediately or they would take immediate legal action against her.

14.     To date, no such legal action has been taken.

15.     During this September 8, 2012 conversation, NACS gave Plaintiff the impression that they were the police, telling Plaintiff that they were reading her rights and that she had the "right to remain silent."

16.     NACS told Plaintiff that she had committed fraud and that they were sending a sheriff over to pick up Plaintiff.

17.     NACS told Plaintiff that she would spend time in jail.

18.     Furthermore, during this conversation, NACS failed to clearly identify the name of their company and failed to state that the reason for their calls was debt collection.

19.     Plaintiff asked that NACS stop calling her and requested that NACS correspond with her only through writing regarding the Debt.

20.     NACS, however, proceeded to call Plaintiff back three more times the same day, September 8, 2012, and again informed Plaintiff they were reading her rights, thereby relaying the impression to Plaintiff that NACS was the police.

21.     NACS then called Plaintiff's mother-in-law.

22.     During the conversation with Plaintiff's mother-in-law, NACS disclosed information regarding the nature of the Debt and said that Plaintiff had committed fraud.

23.     NACS also accused Plaintiff's mother-in-law of committing fraud and stated that she was a co-signer on the Debt when she was not.

24.     NACS also threatened Plaintiff's mother-in-law, stating that she needed to satisfy the Debt immediately or else NACS would send a sheriff over to take her to jail.

25.     NACS then placed a call to Plaintiff's sister and accused her of committing fraud with Plaintiff.

26.     NACS told Plaintiff's sister that she owed $2,000.00 towards the Debt and that they were also sending a sheriff to take her to jail.

27.     During this conversation, NACS threatened to send immigration after Plaintiff and Plaintiff's sister.

28.     NACS also accused Plaintiff's sister of lying, stating that if she did not provide NACS with Plaintiff's number and address, it was because she was "covering up" for Plaintiff.

29.     NACS then called Plaintiff's brother at his place of employment.

30.     NACS continued as they had in their previous conversations with Plaintiff's mother-in-law and sister, telling Plaintiff's brother that if Plaintiff did not return their calls within twenty-four hours, NACS would send the sheriff over.

31.     Plaintiff called NACS on September 10, 2012, in reference to the threats of arrest.  During this call, an NACS representative informed Plaintiff that she would review the recordings of the conversations.  The NACS representative also said that if she found out that Plaintiff had been harassing her employees, NACS would take legal action against Plaintiff.

32.     Lastly, NACS failed to send Plaintiff written validation of the Debt.

33.     NACS's calls were extremely harassing and caused Plaintiff a great deal of stress.

**C. Plaintiff Suffered Actual Damages**

34.     The Plaintiff has suffered and continues to suffer actual damages as a result of the Defendants' unlawful conduct.

35.     As a direct consequence of the Defendants' acts, practices and conduct, the Plaintiff suffered and continues to suffer from humiliation, anger, anxiety, emotional distress, fear, frustration, and embarrassment.

# COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692, et seq.

36.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

37.     The Defendants communicated with individuals other than the Plaintiff, the Plaintiff's attorney, or a credit bureau, in violation of 15 U.S.C. § 1692c(b).

38.     The Defendants engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d.

39.     The Defendants used profane and abusive language when speaking with the consumer, in violation of 15 U.S.C. § 1692d(2).

40.     The Defendants caused a phone to ring repeatedly and engaged the Plaintiff in telephone conversations, with the intent to annoy and harass, in violation of 15 U.S.C. § 1692d(5).

41.     The Defendants placed calls to the Plaintiff without disclosing the identity of the debt collection agency, in violation of 15 U.S.C. § 1692d(6).

42.     The Defendants used false, deceptive, or misleading representation or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e.

43.     The Defendants falsely represented to the Plaintiff that it was affiliated with the United States or a government entity, in violation of 15 U.S.C. § 1692e(1).

44.	The Defendants threatened to take legal action, without actually intending to do so, in violation of 15 U.S.C. § 1692e(5).

45.	The Defendants falsely misrepresented that the Plaintiff had committed a crime, in order to disgrace the Plaintiff, in violation of 15 U.S.C. § 1692e(7).

46.	The Defendants employed false and deceptive means to collect a debt, in violation of 15 U.S.C. § 1692e(10).

47.	The Defendants failed to inform the consumer that the communication was an attempt to collect a debt, in violation of 15 U.S.C. § 1692e(11).

48.	The Defendants used unfair and unconscionable means to collect a debt, in violation of 15 U.S.C. § 1692f.

49.	The Defendants failed to send Plaintiff an initial letter within five days of its initial contact with Plaintiff as required by law, in violation of 15 U.S.C. § 1692g(a).

50.	The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the FDCPA, including every one of the above-cited provisions.

51.	The Plaintiff is entitled to damages as a result of the Defendants' violations.

## COUNT II

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

52.	The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

53.	The Restatement of Torts, Second, § 652(b) defines intrusion upon seclusion as, "One who intentionally intrudes…upon the solitude or seclusion of another, or his

8

private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

54.    Arizona further recognizes the Plaintiff's right to be free from invasions of privacy, thus Defendant violated Arizona state law.

55.    The Defendant intentionally intruded upon Plaintiff's right to privacy by continually harassing the Plaintiff with repeated phone calls.

56.    The telephone calls made by Defendants to the Plaintiff were so persistent and repeated with such frequency as to be considered, "hounding the plaintiff," and, "a substantial burden to her existence," thus satisfying the Restatement of Torts, Second, § 652(b) requirement for an invasion of privacy.

57.    The conduct of the Defendants in engaging in the illegal collection activities resulted in multiple invasions of privacy in such a way as would be considered highly offensive to a reasonable person.

58.    As a result of the intrusions and invasions, the Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendants.

59.    All acts of Defendants and its agents were committed with malice, intent, wantonness, and recklessness, and as such, Defendants are subject to punitive damages.

9

**COUNT III**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

60.     The Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully set forth herein at length.

61.     The acts, practices, and conduct engaged in by the Defendants vis-à-vis the

Plaintiff was so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community.

62.     The foregoing conduct constitutes the tort of intentional infliction of emotional

distress under the laws of the State of Arizona.

63.     As a result of the Defendants' intentional infliction of emotional distress, the

Plaintiff is entitled to actual damages in an amount to be determined at trial from

Defendants.

**PRAYER FOR RELIEF**

          WHEREFORE, the Plaintiff prays that judgment be entered against the

Defendants:

                    A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the

                    Defendants;

                    B. Statutory damages of $1,000.00 pursuant to 15 U.S.C.

                    §1692k(a)(2)(A) against the Defendants;

10

C.  Costs of litigation and reasonable attorneys' fees pursuant to

15 U.S.C. § 1692k(a)(3) against the Defendants;

D.  Actual damages from the Defendants for all damages, including

emotional distress suffered as a result of the intentional, reckless, and/or

negligent FDCPA violations and the intentional, reckless, and/or

negligent invasions of privacy in an amount to be determined at trial for

the Plaintiff;

E.  Punitive damages;

F.  For Plaintiff's statutory costs in relation to the Arizona claim(s)

pursuant to A.R.S. § 12-341; and

G.  Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  October 12, 2012                    LEMBERG & ASSOCIATES, LLC


By:   */s/   Trinette G. Kent*
Trinette G. Kent

Attorney for Plaintiff
Concepcion Olivares